Jeremy C. Sink (9916)
**McKAY, BURTON & THURMAN**
15 W. South Temple, Suite 1000
Salt Lake City, UT 84101
Telephone: (801) 521-4135
Fax: (801) 521-4252
Email: jsink@mbt-law.com

## IN THE UNITED STATES BANKRUPTCY COIURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| In re: | |
| 10114 S. Grouse Creek Circle, LLC, | Bankruptcy No. 17-20051 |
| Debtor. | **[Filed Electronically]** |

## TRUSTEE'S MOTION FOR AN ORDER APPROVING THE SALE OF 10114 S. Grouse Creek Circle, Sandy, UT 84092, FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS AND NOTICE OF DEADLINES TO MAKE HIGHER AND BETTER OFFERS

**Objection Deadline:** June 9, 2017
**Hearing Date: June 14, 2017 at 10:30 a.m.**
**Deadline to make a Qualified Bid:** June 12, 2017 by 11:00 a.m. MST
**Auction Date (if any):** June 15, 2017 at 10:00 a.m. at 15 W. South Temple, Suite 1000, SLC, UT

1

Stephen W. Rupp ("Trustee"), Trustee of the Chapter 7 bankruptcy estate of 10114 S. Grouse Creek Circle, LLC, hereby moves the Court for an order approving the sale of the real property known as 10114 South Grouse Creek Circle, Sandy, Utah 84092. The Trustee makes this motion pursuant to Section 363 of the Bankruptcy Code and Bankruptcy Rule 6004. In support of this motion, the Trustee respectfully states as follows:

### Jurisdiction

1.      This Court has jurisdiction to consider this motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. § 1408.

### Case Information

2.      On December 22, 2016, 10114 S. Grouse Creek Circle, LLC ("GCC, LLC" or "Debtor") was created with the Utah Division of Corporations and Commercial Code.

3.      On January 4, 2017 ("Petition Date"), GCC, LLC filed a voluntary bankruptcy petition under chapter 7 of the Bankruptcy Code.

4.      Stephen W. Rupp is the duly appointed, qualified and acting trustee of the Chapter 7 bankruptcy estate of GCC, LLC, case number 17-20051, pending in the United States Bankruptcy Court for the District of Utah.

5.    On Schedule A/B of the Debtor's Statement of Financial Affairs and Schedules, the Debtor identified an ownership interest in real property located at 10114 South Grouse Creek Circle, Sandy, Utah 84092 ("Property").[1]

6.    On Schedule A/B of the Debtor's Statements of Financial Affairs and Schedules, the Debtor lists the appraised value of the Property as $1,900,000.

7.    On Schedule D, the Debtor lists Zions First National Bank as its only creditor.

8.    On Schedule G, the Debtor does not list any executory contract or unexpired lease related to the use of the Property.

9.    As of the Petition Date the Property was listed for sale by two realtors hired by Jon Liddiard.

10.    Upon learning of the listing of the Property by Jon Liddiard, the Trustee through his counsel, instructed the realtors to terminate the listing.

11.    As of the petition date, Jon Liddiard and his family had been living in the Property and are still living in the Property.

12.    The Debtor's Statement of Financial Affairs and Schedules does not identify any income from the occupancy, use or possession of the Property from December 22, 2016 forward.

13.    Neither Liddiard, individually nor as Manager of the Debtor, has serviced the mortgage in favor of Zions First National Bank ("Zions") recorded against the Property, since the Property was transferred to the Debtor on December 22, 2016.

---

[1] The Property was transferred to the Debtor on December 22, 2016 from Jon Liddiard, as Trustee of The Jon Liddiard Trust dated the 16th day of August, 2012 via entry number 12440112 in the Salt Lake County Recorder's Office.

14.    On February 1, 2017 Zions filed the "Motion of Zions First National Bank or Relief From the Automatic Stay" ("Zions' RFS Motion").

15.    Pursuant to the Zions' RFS Motion, Zions alleged as follows:

A.    On February 13, 2007, John Liddiard ("**Liddiard**") entered into a Promissory Note (the "**Note**") with Zions in the principal amount of One Million Nine Hundred Thousand & 00/100 Dollars ($1,900,000.00), together with interest on the unpaid balance from February 13, 2007, until paid in full.

B.    The Note was secured with a first position Deed of Trust, dated February 13, 2007, on real property located at the address commonly known as 10114 S Grouse Creek Circle, Sandy, UT 84092 (the "**Property**"), and more particularly described as:

> LOT 4, BELL CANYON RIDGE, ACCORDING TO THE OFFICIAL PLAT THEREOF ON FILE AND OF RECORD IN THE OFFICE OF THE SALT LAKE COUNTY RECORDER. Tax Id No. 28-11-352-005.

C.    The Deed of Trust was recorded with the Salt Lake County Recorder on February 20, 2007, creating a valid and perfected lien upon the Property.

D.    On August 16, 2012, Liddiard recorded the transfer his ownership in the Property to *The Jon Liddiard Trust dated the 16th day of August, 2012* (the "**Trust**") under a Warranty Deed dated August 16, 2012.

E.    Liddiard became delinquent in payments under the Note, and a Notice of Default was recorded with the Salt Lake County Recorder on December 3, 2015.

F.    On November 29, 2016 notice was given that the Property would be sold at public auction on Thursday, January 5, 2017.

G.    On December 22, 2016, the Trust established *10114 S GROUSE CREEK CIRCLE, LLC* (the **Debtor**") by filing a Certificate of Organization (the "**Certificate**") with the State of Utah Department of Corporations, which Liddiard signed as Trustee of the Trust which is the Manager of the Debtor LLC.

H.    Also on December 22, 2016, the Trust transferred the Property by Warranty Deed to the Debtor.

4

16.     On or about February 10, 2017, the Trustee filed adversary proceeding no. 17-02017 ("Adversary Proceeding") against Liddiard seeking relief on various causes of action related to Liddiard's ongoing use of the Property.

17.     The Debtor, Liddiard and Zions disagree as to the value of the Property.

18.     Liddiard, as the party personally liable for any deficiency balance owed on the Note, believes the Property will show and sell for a higher amount if he continues to reside in the Property and maintain the Property in its current condition.

19.     On March 23, 2017 the Trustee and Zions entered into a Stipulation related to the listing of the Property for sale and ongoing use and occupation of the Property.  A copy of the Stipulation can be found as docket number 14 in case number 17-20051.

20.     On March 31, 2017 the Order Granting Trustee's Application to Employ Professional Kenneth A. Sperling as Realtor was entered by the bankruptcy court.  See Docket No. 18.

21.     On May 2, 2017 the Trustee filed a motion to approve a settlement agreement with Mr. Liddiard.  The Settlement Agreement resolved the ongoing occupancy of the premises by Liddiard, the Adversary Proceeding, the listing of the property by the Trustee and an agreement for Liddiard to vacate the premises upon bankruptcy court approval of any sale of the Property.  A hearing on the May 2, 2017 motion is scheduled before the Honorable R. Kimball Mosier on June 14, 2017 at 10:30 a.m.

### Terms of Proposed Sale

22.     Identification of Purchaser.  The purchaser is Rukiya A. Packer ("Packer").

23.    <u>Property to be Sold</u>. Packer has offered to purchase the real property located at 10114

S. Grouse Creek Cir., Sandy, Utah, 84092, also known as SLC Tax ID # 28-11-352-005, for

$1,650,000 cash at closing ("Purchase Price"). Packer's offer is set forth in the Real Estate

Purchase Contract signed by the Trustee on May 5, 2017 (the "REPC") a copy of which is

attached to this motion as Exhibit 1. To the Trustee's knowledge, Packer has no prior relationship

with the Debtor or its principals, Mr. Liddiard, nor any relationship with the Trustee, his

professionals or any creditor in this case. The REPC has been negotiated at arms-length and in

good faith by the Trustee and Packer. The Trustee reasonably believes and therefore alleges that

Packer is a good faith purchaser within the meaning of 11 U.S.C. § 363(m) and that the sale price

is not and will not be controlled by an agreement prohibited by 11 U.S.C. § 363(n). The sale

includes the following:

A. The real property located at 10114 S. Grouse Creek Cir., Sandy, Utah;

B. All improvements to the real property including the residence, garages, swimming
pool, and improvements and equipment related to the same;

C. The personal property as set forth in the REPC and "Agreement Regarding
Included & Excluded Items" attached hereto as Exhibit 2.

24.    <u>Liens</u>. The property is to be sold free and clear of any and all liens, claims,

encumbrances and interest with valid liens to attach to the proceeds.

25.    <u>Distribution of Sale Proceeds</u>. The Trustee intends to close this transaction at

Westcor Land Title Insurance Company. Distribution by the Trustee may be accomplished by or

through Westcor Land Title Insurance Company. From the sale proceeds the Trustee will pay the

following:

    A. A 3% sale commission to the Trustee's broker (Sperling Realtors)[2] totaling

        $49,500, if the sales price is $1,650,000, or 3% of any higher sales price;

    B. Title and closing costs.

    C. Prorated and delinquent real property taxes, if any;

    D. An agreed upon carve out to the Trustee of $10,000 pursuant to the Stipulation

        between Zions and the Trustee on file with the Bankruptcy Court.

    E. The balance of the funds to Zions.

26.    <u>Other Terms</u>:  Interested parties are encouraged to read the Agreement and this

Motion for a more complete understanding of all terms and conditions of the proposed sale.

**<u>Solicitation of Competing Bids and Description of Auction Procedure</u>**

27.    <u>Sale Subject to Higher and Better Bids</u>.  The Trustee's sale of this real property is

subject to higher and better bids and the Trustee hereby solicits competing bids from parties in interest.  In

order for a bid to be a qualified bid entitled to consideration by the Trustee at or before the auction

described below, any competing bid must include the following:

    a)    Include evidence satisfactory to the Trustee of such bidder's financial

    ability to timely consummate the transaction substantially in accordance with

    requirements of the REPC;

    b)    Provide for a purchase price of at least $1,655,000.00, acceptable to the

    Trustee and payable in cash at closing (closing to occur on or before July 5, 2017,

---

[2] Sperling's Listing Agreement with the Trustee allows for a commission of 6% to be split between the Buyer's broker and the Seller's broker, but limits the commission to 3% to be paid to Sperling if the Buyer does not have a broker.  Pursuant to the REPC, the Buyer does not have a broker.

following bankruptcy court approval as set forth in paragraph 24 and Addendum 1 of the REPC or such other date as approved by the Bankruptcy Court);

c)      Include a good faith deposit in the amount of no less than $20,000.00 as and for earnest money, in cash or in other form of immediately available funds, which shall in fact be delivered to the Trustee's realtor, Ken Sperling, within one business day following acceptance of the offer or by **June 12, 2017 at 11:00 a.m.** ("Bid Deadline") whichever date occurs first; and

d)      Be substantially in the form of the REPC attached hereto as Exhibit 1.

e)      Confirm the bidder's availability to attend an auction on **June 15, 2017** at 10:00 a.m. at the law offices of McKay, Burton & Thurman, 15 W. South Temple, Suite 1000, Salt Lake City, UT 84101.

f)      Confirm the bidder's availability to attend a subsequent hearing to approve the auction bid, if the auction is held on June 15, 2017, sometime between June 15, 2017 and July 5, 2017.

28.  If the Trustee determines that a party's bid is a qualified bid as set forth in paragraph 27 herein, and said bid(s) is/are accepted by the Trustee, then any deposit on such bid shall be retained by the Trustee and applied, without interest, against the purchase price.  If the bid is displaced by a higher and better bid or is matched by the party possessing the right to match as set forth in paragraph 4 of Addendum No. 1 attached to the REPC, any deposit pertaining to an unsuccessful bid will be returned, without interest.

29.  Default.  The rights of the Trustee and any buyer whose bid is accepted and approved by the Court in the event of default shall be governed by the terms of Paragraph 16 of the REPC.

30.     Bid Deadline.  Any party that desires to participate in the auction must deliver

a qualified competing bid, with a good faith deposit of no less than $20,000.00, to the Trustee on or

before **Monday June 12, 2017 at 11:00 a.m. Mountain Standard Time** (the "Bid Deadline").

31.     Auction Procedures.  If one or more qualified competing bids are submitted

by the Bid Deadline, the Trustee will conduct an auction on the following terms:

a)     The real and personal property identified in Exhibit 1 and Exhibit 2 will be

auctioned as a single lot.  The auction will be a stand alone auction, meaning that the successful bidder

will be entitled to purchase the property notwithstanding that another bidder may attempt to offer more for

the Debtor's entire estate or any other combination of lots which includes these assets.

b)     The auction **will only be held** if the Trustee receives a timely qualified

bid which the Trustee determines to be higher and better than Packer's offer.  The auction will be held on

**June 15, 2017, commencing at 10:00 a.m.** Mountain Time at the offices of McKay, Burton & Thurman,

15 West, South Temple, Suite 1000, Salt Lake City, Utah.  Participants in the auction will be Rukiya A.

Packer and any other bidders selected by Trustee as the maker(s) of a higher and better qualified bid.

c)     Bids at the auction will be in increments of at least $1,000.00 greater than the

last bid, and the auction will be closed within a reasonable time after the last bid made, within the

Trustee's discretion.

d)     The winning bidder must close the sale and pay the balance of the

purchase price above the deposit no later than July 5, 2017 or another date approved by the court at the

hearing on this motion, after entry of the Court order approving the sale; provided, however, that in the

event the Court does not enter an order that eliminates the stay provided in Fed. R. Bankr. Proc. 6004(h),

the winning bidder must close the sale and pay the balance of the purchase price no later than 15 days after entry of an order approving the sale.

e)       The Trustee may take a backup bid from any third party for the sale of the assets on terms that may be agreed to between the Trustee and that third party; provided however, any backup bid shall be expressly made subject to the failure of the winning bidder at the auction to timely close upon its winning bid and Court approval.

32.       Request for Waiver of Stay. Paragraph 24(d) of the REPC requires that the sale close on July 5, 2017.  Based upon the foregoing the Trustee requests that the Court order that the 14 day stay of Bankruptcy Rule 6004(h) be waived and that the order approving the sale be effective upon entry, to allow for an earlier closing, if wanted by the successful bidder.

WHEREFORE, the Trustee respectfully requests that the Court enter an order granting the relief requested herein.

DATED this 15th day of May, 2017.

McKAY, BURTON & THURMAN

By: _____/S/_____
Jeremy C. Sink
Attorneys for Stephen W. Rupp, Liquidating Trustee

**CERTIFICATE OF SERVICE – BY NOTICE OF ELECTRONIC FILING (CM/ECF)**

I hereby certify that on May 15, 2017, I electronically filed the foregoing with the United States Bankruptcy Court for the District of Utah by using the CM/ECF system. I further certify that the parties of record in this case, as identified below, are registered CM/ECF users and received notice of the same.

- **David P. Billings**    dbillings@fabianvancott.com, aclark@fabianvancott.com

- **Glenn R. Bronson**    grb@princeyeates.com,
  carolp@princeyeates.com;paulette@princeyeates.com
- **Johnathan M. Duncan**    johnathanmduncan@gmail.com,
  john@duncanlawpc.com
- **Stephen W. Rupp tr**    rupptrustee@mbt-law.com, UT03@ecfcbis.com
- **Jeremy C. Sink**    jsink@mbt-law.com
- **United States Trustee**    USTPRegion19.SK.ECF@usdoj.gov

**All other parties entitled to electronic notice in this bankruptcy case:**

## CERTIFICATEOFSERVICE – MAIL, OTHER

Counsel for the Trustee certifies that the Trustee's realtor will notify all parties who have made offers and/or inquiries as to the sale of the property of this motion and the applicable deadlines herein and will provide a copy of the motion to said parties upon request.

_____ /s/ Jeremy C. Sink

# EXHIBIT 1

 Utah Association of REALTORS®

# REAL ESTATE PURCHASE CONTRACT



This is a legally binding Real Estate Purchase Contract ("REPC"). Utah law requires real estate licensees to use this form. Buyer and Seller, however, may agree to alter or delete its provisions or to use a different form. If you desire legal or tax advice, consult your attorney or tax advisor.

## OFFER TO PURCHASE AND EARNEST MONEY DEPOSIT

On this <u>4th</u> day of <u>May, 2017</u> ("Offer Reference Date") <u>Rukiya A. Packer</u> ("Buyer") offers to purchase from <u>Stephen W. Rupp, trustee</u> ("Seller") the Property described below and [X] delivers to the **Buyer's Brokerage with this offer, or** [ ] agrees to deliver no later than four (4) calendar days after Acceptance (as defined in Section 23), Earnest Money in the amount of $<u>17,000</u> in the form of <u>certified check</u>. After Acceptance of the REPC by Buyer and Seller, and receipt of the Earnest Money by the Brokerage, the Brokerage shall have four (4) calendar days in which to deposit the Earnest Money into the Brokerage Real Estate Trust Account.

Buyer's Brokerage: <u>Sperling, REALTORS</u>                Phone: <u>801-272-8636</u>
Received by: _____        on _____ (Date)
(Signature above acknowledges receipt of Earnest Money)

## OTHER PROVISIONS

**1. PROPERTY:** <u>10114 S. Grouse Creek Cir.</u> _____ also described as: <u>SLC Tax ID #28-11-352-005</u> _____ City of <u>Sandy</u>, County of <u>Salt Lake</u>, State of Utah, Zip <u>84092</u> (the "Property"). Any reference below to the term "Property" shall include the Property described above, together with the Included Items and water rights/water shares, if any, referenced in Sections 1.1, 1.2 and 1.4.

**1.1 Included Items.** Unless excluded herein, this sale includes the following items if presently owned and in place on the Property: plumbing, heating, air conditioning fixtures and equipment; ovens, ranges and hoods; cook tops; dishwashers; ceiling fans; water heaters; light fixtures and bulbs; bathroom fixtures and bathroom mirrors; curtains, draperies, rods, window blinds and shutters; window and door screens; storm doors and windows; awnings; satellite dishes; affixed carpets; automatic garage door openers and accompanying transmitters; security system; fencing and any landscaping.

**1.2 Other Included Items.** The following items that are presently owned and in place on the Property have been left for the convenience of the parties and are also included in this sale **(check applicable box):** [ ] **washers** [ ] **dryers** [X] **refrigerators** [X] **water softeners** [X] **microwave ovens** [ ] **other (specify)** <u>kitchen ice maker, all dishwashers, basketball standard and backboard</u> _____ The above checked items shall be conveyed to Buyer under separate bill of sale with warranties as to title.

**1.3 Excluded Items.** The following items are excluded from this sale: <u>Basement refrigerator. All cabinets not attached, kitchen wine refrigerator</u>

**1.4 Water Service.** The Purchase Price for the Property shall include all water rights/water shares, if any, that are the legal source for Seller's current culinary water service and irrigation water service, if any, to the Property. The water rights/water shares will be conveyed or otherwise transferred to Buyer at Closing by applicable deed or legal instruments. The following water rights/water shares, if applicable, are specifically excluded from this sale: _____

**2. PURCHASE PRICE.** The purchase price for the Property is $<u>1,700,000</u>. Except as provided in this Section, the Purchase Price shall be paid as provided in Sections 2(a) through 2(d) below. Any amounts shown in 2(b) and 2(d) may be adjusted as deemed necessary by Buyer and the Lender.

| | |
|---|---|
| $<u>17,000</u> | **(a) Earnest Money Deposit.** Under certain conditions described in the REPC, this deposit may become totally non refundable. |
| $_____ | **(b) New Loan.** Buyer may apply for mortgage loan financing (the "Loan") on terms acceptable to Buyer. If an FHA/VA loan applies, see attached FHA/VA Loan Addendum. |
| $_____ | **(c) Seller Financing** (see attached Seller Financing Addendum) |
| $<u>1,649,000</u> | **(d) Balance of Purchase Price in Cash at Settlement** |
| $<u>1,700,000</u> | **PURCHASE PRICE. Total of lines (a) through (d)** |

**3. SETTLEMENT AND CLOSING.**

**3.1 Settlement.** Settlement shall take place no later than the Settlement Deadline referenced in Section 24(d), or as otherwise mutually agreed by Buyer and Seller in writing. "Settlement" shall occur only when all of the following have been completed: (a) Buyer and Seller have signed and delivered to each other or to the escrow/closing office all documents required

Page 1 of 6          Buyer's Initials <u>RAP</u> Date <u>5/4/2017</u> Seller's Initials <u>SWR</u> Date <u>5/5/17</u>

by the REPC, by the Lender, by the title insurance and escrow/closing offices, by written escrow instructions (including any split closing instructions, if applicable), or by applicable law; (b) any monies required to be paid by Buyer or Seller under these documents (except for the proceeds of any new loan) have been delivered by Buyer or Seller to the other party, or to the escrow/closing office, in the form of cash, wire transfer, cashier's check, or other form acceptable to the escrow/closing office.

**3.2 Prorations.** All prorations, including, but not limited to, homeowner's association dues, property taxes for the current year, rents, and interest on assumed obligations, if any, shall be made as of the Settlement Deadline referenced in Section 24(d), unless otherwise agreed to in writing by the parties. Such writing could include the settlement statement. The provisions of this Section 3.2 shall survive Closing.

**3.3 Special Assessments.** Any assessments for capital improvements as approved by the HOA (pursuant to HOA governing documents) or as assessed by a municipality or special improvement district, prior to the Settlement Deadline shall be paid for by: **[X] Seller [ ] Buyer [ ] Split Equally Between Buyer and Seller [ ] Other (explain)** _____.
The provisions of this Section 3.3 shall survive Closing.

**3.4 Fees/Costs/Payment Obligations.** Unless otherwise agreed to in writing, Seller and Buyer shall each pay one-half (½) of the fee charged by the escrow/closing office for its services in the settlement/closing process. Tenant deposits (including, but not limited to, security deposits, cleaning deposits and prepaid rents) shall be paid or credited by Seller to Buyer at Settlement. Buyer agrees to be responsible for homeowners' association and private and public utility service transfer fees, if any, and all utilities and other services provided to the Property after the Settlement Deadline. The escrow/closing office is authorized and directed to withhold from Seller's proceeds at Closing, sufficient funds to pay off on Seller's behalf all mortgages, trust deeds, judgments, mechanic's liens, tax liens and warrants. The provisions of this Section 3.4 shall survive Closing.

**3.5 Closing.** For purposes of the REPC, "Closing" means that: (a) Settlement has been completed; (b) the proceeds of any new loan have been delivered by the Lender to Seller or to the escrow/closing office; and (c) the applicable Closing documents have been recorded in the office of the county recorder. The actions described in 3.5 (b) and (c) shall be completed within four calendar days after Settlement.

**4. POSSESSION.** Seller shall deliver physical possession of the Property to Buyer as follows: [ ] Upon Closing; [X] 48 Hours after Closing; [ ] __ Calendar Days after Closing. Any contracted rental of the Property prior to or after Closing, between Buyer and Seller, shall be by separate written agreement. Seller and Buyer shall each be responsible for any insurance coverage each party deems necessary for the Property including any personal property and belongings. Seller agrees to deliver the Property to Buyer in broom-clean condition and free of debris and personal belongings. Any Seller or tenant moving-related damage to the Property shall be repaired at Seller's expense. The provisions of this Section 4 shall survive Closing.

**5. CONFIRMATION OF AGENCY DISCLOSURE.** Buyer and Seller acknowledge prior written receipt of agency disclosure provided by their respective agent that has disclosed the agency relationships confirmed below. At the signing of the REPC:

Seller's Agent Kenneth A. Sperling___, represents [X] Seller [ ] both Buyer and Seller as a Limited Agent;

Seller's Brokerage Sperling Realtors, Inc., represents [X] Seller [ ] both Buyer and Seller as a Limited Agent;

Buyer's Agent N/A_____, represents [ ] Buyer [ ] both Buyer and Seller as a Limited Agent;

Buyer's Brokerage N/A_____, represents [ ] Buyer [ ] both Buyer and Seller as a Limited Agent.

**6. TITLE & TITLE INSURANCE.**

**6.1 Title to Property.** Seller represents that Seller has fee title to the Property and will convey marketable title to the Property to Buyer at Closing by general warranty deed. Buyer does agree to accept title to the Property subject to the contents of the Commitment for Title Insurance (the "Commitment") provided by Seller under Section 7, and as reviewed and approved by Buyer under Section 8. Buyer also agrees to accept title to the Property subject to any existing leases, rental and property management agreements affecting the Property not expiring prior to Closing which were provided to Buyer pursuant to Section 7(e). The provisions of this Section 6.1 shall survive Closing.

**6.2 Title Insurance.** At Settlement, Seller agrees to pay for and cause to be issued in favor of Buyer, through the title insurance agency that issued the Commitment (the "Issuing Agent"), the most current version of the *ALTA Homeowner's Policy of Title Insurance* (the "Homeowner's Policy"). If the Homeowner's Policy is not available through the Issuing Agent, Buyer and Seller further agree as follows: (a) Seller agrees to pay for the Homeowner's Policy if available through any other title insurance agency selected by Buyer; (b) If the Homeowner's Policy is not available either through the Issuing Agent or any other title insurance agency, then Seller agrees to pay for, and Buyer agrees to accept, the most current available version of an *ALTA Owner's Policy of Title Insurance* ("Standard Coverage Owner's Policy") available through the Issuing Agent.

**7. SELLER DISCLOSURES.** No later than the Seller Disclosure Deadline referenced in Section 24(a), Seller shall provide to Buyer the following documents in hard copy or electronic format which are collectively referred to as the "Seller Disclosures":

(a) a written Seller property condition disclosure for the Property, completed, signed and dated by Seller as provided in Section 10.3;

(b) a Commitment for Title Insurance as referenced in Section 6;

(c) a copy of any restrictive covenants (CC&R's), rules and regulations affecting the Property;

Buyer's Initials RAP   Date 5/4/2017   Seller's Initials ___   Date 5/5/17

(d) a copy of the most recent minutes, budget and financial statement for the homeowners' association, if any;

(e) a copy of any lease, rental, and property management agreements affecting the Property not expiring prior to Closing;

(f) evidence of any water rights and/or water shares referenced in Section 1.4;

(g) written notice of any claims and/or conditions known to Seller relating to environmental problems and building or zoning code violations; and

(h) Other (specify) _____

## 8. BUYER'S CONDITIONS OF PURCHASE.

### 8.1 DUE DILIGENCE CONDITION.

Buyer's obligation to purchase the Property: **[X] IS [ ] IS NOT** conditioned upon Buyer's Due Diligence as defined in this Section 8.1(a) below. This condition is referred to as the "Due Diligence Condition." If checked in the affirmative, Sections 8.1(a) through 8.1(c) apply; otherwise they do not.

**(a) Due Diligence Items.** Buyer's Due Diligence shall consist of Buyer's review and approval of the contents of the Seller Disclosures referenced in Section 7, and any other tests, evaluations and verifications of the Property deemed necessary or appropriate by Buyer, such as: the physical condition of the Property; the existence of any hazardous substances, environmental issues or geologic conditions; the square footage or acreage of the land and/or improvements; the condition of the roof, walls, and foundation; the condition of the plumbing, electrical, mechanical, heating and air conditioning systems and fixtures; the condition of all appliances; the costs and availability of homeowners' insurance and flood insurance, if applicable; water source, availability and quality; the location of property lines; regulatory use restrictions or violations; fees for services such as HOA dues, municipal services, and utility costs; convicted sex offenders residing in proximity to the Property; and any other matters deemed material to Buyer in making a decision to purchase the Property. Unless otherwise provided in the REPC, all of Buyer's Due Diligence shall be paid for by Buyer and shall be conducted by individuals or entities of Buyer's choice. Seller agrees to cooperate with Buyer's Due Diligence. Buyer agrees to pay for any damage to the Property resulting from any such inspections or tests during the Due Diligence.

**(b) Buyer's Right to Cancel or Resolve Objections.** If Buyer determines, in Buyer's sole discretion, that the results of the Due Diligence are unacceptable, Buyer may either: (i) no later than the Due Diligence Deadline referenced in Section 24(b), cancel the REPC by providing written notice to Seller, whereupon the Earnest Money Deposit shall be released to Buyer without the requirement of further written authorization from Seller; or (ii) no later than the Due Diligence Deadline referenced in Section 24(b), resolve in writing with Seller any objections Buyer has arising from Buyer's Due Diligence.

**(c) Failure to Cancel or Resolve Objections.** If Buyer fails to cancel the REPC or fails to resolve in writing any objections Buyer has arising from Buyer's Due Diligence, as provided in Section 8.1(b), Buyer shall be deemed to have waived the Due Diligence Condition.

**8.2 APPRAISAL CONDITION.** Buyer's obligation to purchase the Property: **[ ] IS [X] IS NOT** conditioned upon the Property appraising for not less than the Purchase Price. This condition is referred to as the "Appraisal Condition." If checked in the affirmative, Sections 8.2(a) and 8.2(b) apply; otherwise they do not.

**(a) Buyer's Right to Cancel.** If after completion of an appraisal by a licensed appraiser, Buyer receives written notice from the Lender or the appraiser that the Property has appraised for less than the Purchase Price (a "Notice of Appraised Value"), Buyer may cancel the REPC by providing written notice to Seller (with a copy of the Notice of Appraised Value) no later than the Financing & Appraisal Deadline referenced in Section 24(c); whereupon the Earnest Money Deposit shall be released to Buyer without the requirement of further written authorization from Seller.

**(b) Failure to Cancel.** If the REPC is not cancelled as provided in this section 8.2, Buyer shall be deemed to have waived the Appraisal Condition.

**8.3 FINANCING CONDITION.** Buyer's obligation to purchase the property: **[ ] IS [X] IS NOT** conditioned upon Buyer obtaining the Loan referenced in Section 2(b). This condition is referred to as the "Financing Condition." If checked in the affirmative, Sections 8.3(a) and 8.3(b) apply; otherwise they do not. If the Financing Condition applies, Buyer agrees to work diligently and in good faith to obtain the Loan.

**(a) Buyer's Right to Cancel Before the Financing & Appraisal Deadline.** If Buyer, in Buyer's sole discretion, is not satisfied with the terms and conditions of the Loan, Buyer may cancel the REPC by providing written notice to Seller no later than the Financing & Appraisal Deadline referenced in Section 24(c); whereupon the Earnest Money Deposit shall be released to Buyer without the requirement of further written authorization from Seller.

**(b) Buyer's Right to Cancel After the Financing & Appraisal Deadline.** If after expiration of the Financing & Appraisal Deadline referenced in Section 24(c), Buyer fails to obtain the Loan, meaning that the proceeds of the Loan have not been delivered by the Lender or to the escrow/closing office as required under Section 3.5 of the REPC, then Buyer or Seller may cancel the REPC by providing written notice to the other party; whereupon the Earnest Money Deposit, or Deposits, if applicable (see Section 8.4 below), shall be released to Seller without the requirement of further written authorization from Buyer. In the event of such cancellation, Seller agrees to accept as Seller's exclusive remedy, the Earnest Money Deposit, or Deposits, if applicable, as liquidated damages. Buyer and Seller agree that liquidated damages would be difficult and impractical to calculate, and the Earnest Money Deposit, or Deposits, if applicable, is a fair and reasonable estimate of Seller's damages in the event Buyer fails to obtain the Loan.

**8.4 ADDITIONAL EARNEST MONEY DEPOSIT.** If the REPC has not been previously canceled by Buyer as provided in Sections 8.1, 8.2 or 8.3(a), then no later than the Due Diligence Deadline referenced in Section 24(b), or the Financing

& Appraisal Deadline referenced in Section 24(c), whichever is later, Buyer: [X] WILL [ ] WILL NOT deliver to the Buyer's Brokerage, an Additional Earnest Money Deposit in the amount of $34000____. The Earnest Money Deposit and the Additional Earnest Money Deposit, if applicable, are sometimes referred to herein as the "Deposits". The Earnest Money Deposit, or Deposits, if applicable, shall be credited toward the Purchase Price at Closing.

**9. ADDENDA.** There [X] ARE [ ] ARE NOT addenda to the REPC containing additional terms. If there are, the terms of the following addenda are incorporated into the REPC by this reference: [ ] Addendum No. ____ [ ] Seller Financing Addendum [ ] FHA/VA Loan Addendum [ ] Lead-Based Paint Disclosure & Acknowledgement (in some transactions this disclosure is required by law) [X] Other (specify) Addendum #1_____

**10. HOME WARRANTY PLAN / AS-IS CONDITION OF PROPERTY.**

**10.1 Home Warranty Plan.** A one-year Home Warranty Plan [ ] WILL [X] WILL NOT be included in this transaction. If included, the Home Warranty Plan shall be ordered by [ ] Buyer [ ] Seller and shall be issued by a company selected by [ ] Buyer [ ] Seller. The cost of the Home Warranty Plan shall not exceed $_____ and shall be paid for at Settlement by [ ] Buyer [ ] Seller.

**10.2 Condition of Property/Buyer Acknowledgements.** Buyer acknowledges and agrees that in reference to the physical condition of the Property: (a) Buyer is purchasing the Property in its "As-Is" condition without expressed or implied warranties of any kind; (b) Buyer shall have, during Buyer's Due Diligence as referenced in Section 8.1, an opportunity to completely inspect and evaluate the condition of the Property; and (c) if based on the Buyer's Due Diligence, Buyer elects to proceed with the purchase of the Property, Buyer is relying wholly on Buyer's own judgment and that of any contractors or inspectors engaged by Buyer to review, evaluate and inspect the Property.

**10.3 Condition of Property/Seller Acknowledgements.** Seller acknowledges and agrees that in reference to the physical condition of the Property, Seller agrees to: (a) disclose in writing to Buyer defects in the Property known to Seller that materially affect the value of the Property that cannot be discovered by a reasonable inspection by an ordinary prudent Buyer; (b) carefully review, complete, and provide to Buyer a written Seller property condition disclosure as stated in section 7(a); and (c) deliver the Property to Buyer in substantially the same general condition as it was on the date of Acceptance, as defined in Section 23, ordinary wear and tear excepted. The provisions of Sections 10.2 and 10.3 shall survive Closing.

**11. FINAL PRE-SETTLEMENT WALK-THROUGH INSPECTION.**

**11.1 Walk-Through Inspection.** No earlier than seven (7) calendar days prior to Settlement, and upon reasonable notice and at a reasonable time, Buyer may conduct a final pre-Settlement walk-through inspection of the Property to determine only that the Property is "as represented," meaning that the items referenced in Sections 1.1, 1.2 and 8.1(b)(ii) ("the items") are respectively present, repaired or corrected as agreed. The failure to conduct a walk-through inspection or to claim that an item is not as represented shall not constitute a waiver by Buyer of the right to receive, on the date of possession, the items as represented. If the items are not as represented, Seller agrees to cause all applicable items to be corrected, repaired or replaced (the "Work") prior to the Settlement Deadline referenced in Section 24(d).

**11.2 Escrow to Complete the Work.** If, as of Settlement, the Work has not been completed, then Buyer and Seller agree to withhold in escrow at Settlement a reasonable amount agreed to by Seller, Buyer (and Lender, if applicable), sufficient to pay for completion of the Work. If the Work is not completed within thirty (30) calendar days after the Settlement Deadline, the amount so escrowed may, subject to Lender's approval, be released to Buyer as liquidated damages for failure to complete the Work. The provisions of this Section 11.2 shall survive Closing.

**12. CHANGES DURING TRANSACTION.** Seller agrees that from the date of Acceptance until the date of Closing, none of the following shall occur without the prior written consent of Buyer: (a) no changes in any leases, rental or property management agreements shall be made; (b) no new lease, rental or property management agreements shall be entered into; (c) no substantial alterations or improvements to the Property shall be made or undertaken; (d) no further financial encumbrances to the Property shall be made, and (e) no changes in the legal title to the Property shall be made.

**13. AUTHORITY OF SIGNERS.** If Buyer or Seller is a corporation, partnership, trust, estate, limited liability company or other entity, the person signing the REPC on its behalf warrants his or her authority to do so and to bind Buyer and Seller.

**14. COMPLETE CONTRACT.** The REPC together with its addenda, any attached exhibits, and Seller Disclosures (collectively referred to as the "REPC"), constitutes the entire contract between the parties and supersedes and replaces any and all prior negotiations, representations, warranties, understandings or contracts between the parties whether verbal or otherwise. The REPC cannot be changed except by written agreement of the parties.

**15. MEDIATION.** Any dispute relating to the REPC arising prior to or after Closing: [ ] SHALL [ ] MAY AT THE OPTION OF THE PARTIES first be submitted to mediation. Mediation is a process in which the parties meet with an impartial person who helps to resolve the dispute informally and confidentially. Mediators cannot impose binding decisions. The parties to the dispute must agree before any settlement is binding. The parties will jointly appoint an acceptable mediator and share equally in the cost of such mediation. If mediation fails, the other procedures and remedies available under the REPC shall apply. Nothing in this

Section 15 prohibits any party from seeking emergency legal or equitable relief, pending mediation. The provisions of this Section 15 shall survive Closing.

## 16. DEFAULT.

**16.1 Buyer Default.** If Buyer defaults, Seller may elect one of the following remedies: (a) cancel the REPC and retain the Earnest Money Deposit, or Deposits, if applicable, as liquidated damages; (b) maintain the Earnest Money Deposit, or Deposits, if applicable, in trust and sue Buyer to specifically enforce the REPC; or (c) return the Earnest Money Deposit, or Deposits, if applicable, to Buyer and pursue any other remedies available at law.

**16.2 Seller Default.** If Seller defaults, Buyer may elect one of the following remedies: (a) cancel the REPC, and in addition to the return of the Earnest Money Deposit, or Deposits, if applicable, Buyer may elect to accept from Seller, as liquidated damages, a sum equal to the Earnest Money Deposit, or Deposits, if applicable; or (b) maintain the Earnest Money Deposit, or Deposits, if applicable, in trust and sue Seller to specifically enforce the REPC; or (c) accept a return of the Earnest Money Deposit, or Deposits, if applicable, and pursue any other remedies available at law. If Buyer elects to accept liquidated damages, Seller agrees to pay the liquidated damages to Buyer upon demand.

**17. ATTORNEY FEES AND COSTS/GOVERNING LAW.** In the event of litigation or binding arbitration to enforce the REPC, the prevailing party shall be entitled to costs and reasonable attorney fees. However, attorney fees shall not be awarded for participation in mediation under Section 15. This contract shall be governed by and construed in accordance with the laws of the State of Utah. The provisions of this Section 17 shall survive Closing.

**18. NOTICES.** Except as provided in Section 23, all notices required under the REPC must be: (a) in writing; (b) signed by the Buyer or Seller giving notice; and (c) received by the Buyer or the Seller, or their respective agent, or by the brokerage firm representing the Buyer or Seller, no later than the applicable date referenced in the REPC.

**19. NO ASSIGNMENT.** The REPC and the rights and obligations of Buyer hereunder, are personal to Buyer. The REPC may not be assigned by Buyer without the prior written consent of Seller. Provided, however, the transfer of Buyer's interest in the REPC to any business entity in which Buyer holds a legal interest, including, but not limited to, a family partnership, family trust, limited liability company, partnership, or corporation (collectively referred to as a "Permissible Transfer"), shall not be treated as an assignment by Buyer that requires Seller's prior written consent. Furthermore, the inclusion of "and/or assigns" or similar language on the line identifying Buyer on the first page of the REPC shall constitute Seller's written consent only to a Permissible Transfer.

## 20. INSURANCE & RISK OF LOSS.

**20.1 Insurance Coverage.** As of Closing, Buyer shall be responsible to obtain casualty and liability insurance coverage on the Property in amounts acceptable to Buyer and Buyer's Lender, if applicable.

**20.2 Risk of Loss.** If prior to Closing, any part of the Property is damaged or destroyed by fire, vandalism, flood, earthquake, or act of God, the risk of such loss or damage shall be borne by Seller; provided however, that if the cost of repairing such loss or damage would exceed ten percent (10%) of the Purchase Price referenced in Section 2, either Seller or Buyer may elect to cancel the REPC by providing written notice to the other party, in which instance the Earnest Money Deposit, or Deposits, if applicable, shall be returned to Buyer.

**21. TIME IS OF THE ESSENCE.** Time is of the essence regarding the dates set forth in the REPC. Extensions must be agreed to in writing by all parties. Unless otherwise explicitly stated in the REPC: (a) performance under each Section of the REPC which references a date shall absolutely be required by 5:00 PM Mountain Time on the stated date; and (b) the term "days" and "calendar days" shall mean calendar days and shall be counted beginning on the day following the event which triggers the timing requirement (e.g. Acceptance). Performance dates and times referenced herein shall not be binding upon title companies, lenders, appraisers and others not parties to the REPC, except as otherwise agreed to in writing by such non-party.

**22. ELECTRONIC TRANSMISSION AND COUNTERPARTS.** Electronic transmission (including email and fax) of a signed copy of the REPC, any addenda and counteroffers, and the retransmission of any signed electronic transmission shall be the same as delivery of an original. The REPC and any addenda and counteroffers may be executed in counterparts.

**23. ACCEPTANCE.** "Acceptance" occurs only when all of the following have occurred: (a) Seller or Buyer has signed the offer or counteroffer where noted to indicate acceptance; and (b) Seller or Buyer or their agent has communicated to the other party or to the other party's agent that the offer or counteroffer has been signed as required.

Buyer's Initials _R. K._ Date _5/4/2017_ Seller's Initials _SvK_ Date _5/5/17_

**24. CONTRACT DEADLINES.** Buyer and Seller agree that the following deadlines shall apply to the REPC:

| | | |
|---|---|---|
| (a) Seller Disclosure Deadline | May 10, 2017 | (Date) |
| (b) Due Diligence Deadline | May 15, 2017 | (Date) |
| (c) Financing & Appraisal Deadline | N/A | (Date) |
| (d) Settlement Deadline | July 05, 2017 | (Date) |

**25. OFFER AND TIME FOR ACCEPTANCE.** Buyer offers to purchase the Property on the above terms and conditions. If Seller does not accept this offer by: 5 : 00 [ ] AM [X] PM Mountain Time on May 05, 2017 (Date), this offer shall lapse; and the Brokerage shall return any Earnest Money Deposit to Buyer.

Rukiya A Packer                5/4/2017
(Buyer's Signature)          (Offer Date)          (Buyer's Signature)          (Offer Date)

Rukiya A. Packer
(Buyer's Names) (PLEASE PRINT)          (Notice Address)          (Zip Code)   (Phone)

Rukiya A Packer
(Buyer's Names) (PLEASE PRINT)          (Notice Address)          (Zip Code)   (Phone)


## ACCEPTANCE/COUNTEROFFER/REJECTION

**CHECK ONE:**

[X] **ACCEPTANCE OF OFFER TO PURCHASE:** Seller Accepts the foregoing offer on the terms and conditions specified above.

[ ] **COUNTEROFFER:** Seller presents for Buyer's Acceptance the terms of Buyer's offer subject to the exceptions or modifications as specified in the attached ADDENDUM NO. ___

[ ] **REJECTION:** Seller rejects the foregoing offer.

_____      5/5/17
(Seller's Signature)   (Date)   (Time)   (Seller's Signature)          (Date)   (Time)
Stephen W. Rupp, trustee
(Seller's Names) (PLEASE PRINT)          (Notice Address)          (Zip Code)   (Phone)

_____
(Seller's Names) (PLEASE PRINT)          (Notice Address)          (Zip Code)   (Phone)

THIS FORM APPROVED BY THE UTAH REAL ESTATE COMMISSION AND THE OFFICE OF THE UTAH ATTORNEY GENERAL, EFFECTIVE AUGUST 27, 2008. IT REPLACES AND SUPERSEDES ALL PREVIOUSLY APPROVED VERSIONS OF THIS FORM.

Buyer's Initials RAP ___ Date 5/4/201 Seller's Initials GWL ___ Date 5/5/17



ADDENDUM NO. _____1
TO
REAL ESTATE PURCHASE CONTRACT



THIS IS AN [X] ADDENDUM [ ] COUNTEROFFER to that REAL ESTATE PURCHASE CONTRACT (the "REPC") with
an Offer Reference Date of 4th day of May, 2017   including all prior addenda and counteroffers, between
Rukiya A. Packer_____ as Buyer, and Stephen W. Rupp, trustee___ as Seller, regarding the Property
located at 10114 S. Grouse Creek Cir.,  Sandy Utah, 84092_____. The following terms are hereby incorporated as
part of the REPC:
1.  Property is sold in "as-is" condition.  No warranties are expressed or implied._____
2.  Property is sold subject to court approval._____
3.  Property is sold subject to higher and better offers until court approval._____
4.  Buyer in first position has the right to match or withdraw without penalty if there is a subsequent superior
offer._____
5.  Buyer to close within 5 days after court approval._____
6.  No previous statements or disclaimers contained in the purchase contract (REPC), any marketing
materials, MLS data input, or otherwise, shall be treated by the buyer as a warranty by the seller or the
seller's agent regarding the condition of the property.  Seller shall not be responsible for any repairs to the
property either before or after the closing.  This provision shall survive closing._____
7.  Sq. Footage of home to be verified by buyer._____
8.  Title to the property will be conveyed by a trustees deed._____
9.  Pre-approval (not pre-qualification) letter to accompany offer.  If cash offer, proof of funds.____
10.  All inspections to be ordered and paid for by the buyer._____
11.  There are no additional water rights included._____
12.  The earnest money check of 1% is to be in certified funds receipted by the buyer's agent upon the
signing of this addendum and if offer is accepted by the trustee, placed in the buyer's broker's real estate
trust account.  Deposit to be increased to 3% within 24 hours after the due diligence deadline._____
13.  This addendum shall supersede any contradictory terms in the purchase contract._____
14.  Section 8.3a of the purchase contract shall not apply._____
15.  Section 7 of the purchase contract shall not apply._____
16.  Section 15 of the purchase contract shall not apply._____
BUYER AND SELLER AGREE THAT THE CONTRACT DEADLINES REFERENCED IN SECTION 24 OF THE REPC (CHECK
APPLICABLE BOX): [X] REMAIN UNCHANGED [ ] ARE CHANGED AS FOLLOWS: _____
_____

To the extent the terms of this ADDENDUM modify or conflict with any provisions of the REPC, including all prior addenda and
counteroffers, these terms shall control. All other terms of the REPC, including all prior addenda and counteroffers, not modified
by this ADDENDUM shall remain the same. [ ] Seller [ ] Buyer shall have until 5 : 00 [ ] AM [X] PM Mountain Time on
May 05, 2017_____ (Date), to accept the terms of this ADDENDUM in accordance with the provisions of Section 23 of the
REPC. Unless so accepted, the offer as set forth in this ADDENDUM shall lapse.

_Rukiya A Packer_____   _5/4/2017_
[X] Buyer [ ] Seller Signature        (Date)          (Time) [ ] Buyer [ ] Seller Signature        (Date)      (Time)

Buyer's Initials R A P   Seller's Initials SWR        Addendum No. 1 to REPC

## ACCEPTANCE/COUNTEROFFER/REJECTION

CHECK ONE:

[X] ACCEPTANCE: [X] Seller [ ] Buyer hereby accepts the terms of this ADDENDUM.

[ ] COUNTEROFFER: [ ] Seller [ ] Buyer presents as a counteroffer the terms of attached ADDENDUM NO. ___

| (Signature) | 5/5/17 (Date) | (Time) | (Signature) | (Date) | (Time) |
|---|---|---|---|---|---|

[ ] REJECTION: [ ] Seller [ ] Buyer rejects the foregoing ADDENDUM.

| (Signature) | (Date) | (Time) | (Signature) | (Date) | (Time) |
|---|---|---|---|---|---|

**THIS FORM APPROVED BY THE UTAH REAL ESTATE COMMISSION AND THE OFFICE OF THE UTAH ATTORNEY GENERAL, EFFECTIVE AUGUST 5, 2003. IT REPLACES AND SUPERSEDES ALL PREVIOUSLY APPROVED VERSIONS OF THIS FORM.**

Buyer's Initials _RAP_     Seller's Initials _____     Addendum No. 1 to REPC



ADDENDUM NO. __2__
TO
REAL ESTATE PURCHASE CONTRACT



THIS IS AN [X] ADDENDUM [ ] COUNTEROFFER to that REAL ESTATE PURCHASE CONTRACT (the "REPC") with an Offer Reference Date of _4th day of May, 2017_ including all prior addenda and counteroffers, between _Rukiya A. Packer_ as Buyer, and _Stephen W. Rupp, trustee_ as Seller, regarding the Property located at _10114 S. Grouse Creek Cir., Sandy, Utah, 84092_. The following terms are hereby incorporated as part of the REPC:

_1. Based on the home inspection conducted May, 11, 2017, the purchaser revises her offer to $1,650,000._

_2. Upon the signing of this addendum by the trustee, the buyer waives the Section 8.1 contingency and the home is sold in as inspected condition._

BUYER AND SELLER AGREE THAT THE CONTRACT DEADLINES REFERENCED IN SECTION 24 OF THE REPC (CHECK APPLICABLE BOX): [X] REMAIN UNCHANGED [ ] ARE CHANGED AS FOLLOWS: _____

To the extent the terms of this ADDENDUM modify or conflict with any provisions of the REPC, including all prior addenda and counteroffers, these terms shall control. All other terms of the REPC, including all prior addenda and counteroffers, not modified by this ADDENDUM shall remain the same. [X] Seller [ ] Buyer shall have until 11 : 00 [X] AM [ ] PM Mountain Time on _May 15, 2017_ (Date), to accept the terms of this ADDENDUM in accordance with the provisions of Section 23 of the REPC. Unless so accepted, the offer as set forth in this ADDENDUM shall lapse.

_Rukiya A Packer_        _5/12/2017  3:30 pm_
[X] Buyer [ ] Seller Signature        (Date)        (Time) [ ] Buyer [ ] Seller Signature        (Date)        (Time)

### ACCEPTANCE/COUNTEROFFER/REJECTION

CHECK ONE:
[X] ACCEPTANCE: [ ] Seller [ ] Buyer hereby accepts the terms of this ADDENDUM.
[ ] COUNTEROFFER: [ ] Seller [ ] Buyer presents as a counteroffer the terms of attached ADDENDUM NO. ___

_____        _5/15/17    9:10 am_
(Signature)        (Date)        (Time)        (Signature)        (Date)        (Time)

[ ] REJECTION: [ ] Seller [ ] Buyer rejects the foregoing ADDENDUM.

_____        _____        _____        _____        _____        _____
(Signature)        (Date)        (Time)        (Signature)        (Date)        (Time)

THIS FORM APPROVED BY THE UTAH REAL ESTATE COMMISSION AND THE OFFICE OF THE UTAH ATTORNEY GENERAL, EFFECTIVE AUGUST 5, 2003. IT REPLACES AND SUPERSEDES ALL PREVIOUSLY APPROVED VERSIONS OF THIS FORM.

# EXHIBIT 2

10114 S. Grouse Creek Cir., Sandy, Utah

## AGREEMENT REGARDING INCLUDED & EXCLUDED ITEMS

### ITEMS TO BE LEFT IN THE HOME

Kitchen refrigerator
Kitchen Ice Maker
2 kitchen dishwashers
Alarm system
Water softener

### ITEMS TO BE REMOVED BY OWNER

Kitchen wine refrigerator
Basement refrigerator
Basement family room movie projector
Hot tub on master bedroom deck
Basketball standard and backboard
Trampoline

Jon Liddiard, Owner

Rukiya A. Packer, Purchaser